Good morning, your honors. Aaron Morrison, on behalf of Miss Livia Pinheiro, appearing pro bono, I would like to reserve five minutes of my time for rebuttal, if possible. This case involves an agency denial of petitioner's motion to reopen, a motion to reopen that was based on changed country conditions and ineffective assistance of counsel. In regards to the changed conditions aspect of her claim, petitioner argued that there was an increase in violence in regards to LGBT individuals and also women. In denying the petitioner's motion to reopen, the board completely discounted the evidence regarding violence against women and instead erroneously determined that her motion was only based on a fear of harm based on her sexual orientation. The board was not free to disregard the evidence regarding violence against women, given the fact that petitioner herself, being a lesbian, is obviously a woman, and the evidence that was submitted, certainly the board could have... is obviously a woman, does that somehow bootstrap the BIA's analysis into... because it seems like the BIA did address the new evidence regarding sexual orientation, so does that somehow bootstrap that into women more generally? Because presumably the evidence was stronger for the sexual orientation harassment than it was for women in general, although maybe I'm wrong about that. I understand your point, your honor, but I would disagree, I mean, the evidence we submitted with the motion was in the form of reports that indicated that, and this is during the election, that as of February of 2019, four women in Brazil were killed every day in 2019, and also that four out of ten femicides in Latin America occur in Brazil. This court has been very clear that the board is not free to discount relevant evidence, and it essentially told us that it did discount this evidence when it says, petitioner also submitted evidence regarding violence against women, but her claim is against LGBT... or her claim is premised on LGBT status. I mean, I would argue that completely runs afoul of this court's line of cases, starting with Colby Holder, and it's progeny that the board is just simply not free to disregard relevant evidence. As to this claim, you're asking us just to remand it to the board to consider the gender evidence. You don't think... are you making a separate argument that they should reconsider the sexual orientation evidence, or you're conceding that that was properly considered by the BIA? Yes and no. I think what we're arguing is that both of those characteristics need to be considered in conjunction. They argued this separately, and... So you'd argue that on remand they'd have to do a cumulative analysis as well, that it may not be... that the error may not be with the sexual orientation, but I guess the argument would be that homosexual men could face a different risk than lesbian women, and that should be... that should be taken into account. Yes. They need... they can't... the board can't just argue one in isolation from each other. They have to argue them both, or they have to look at them both in conjunction. That is, they have to look at gender and also sexual orientation. And that's because the agency has to consider all of the sources of torture and look at them cumulatively, right, to see whether there's a high enough risk in general. So maybe they overlap, or maybe they don't, but all of the sources need to be considered. Is that... that's your argument? Yes, exactly. Could I ask you about the ineffective assistance claim for a moment? Sure. So the issue of not filing a brief before the BIA, it seems like even though a brief wasn't filed, the BIA considered the appeal and considered the record before the IJ. So I'm just wondering what you think a brief could have added or changed to what actually happened. Like, where was the prejudice from not filing a brief? Well, I mean, there have been two decisions in this that the court has handled down where if the brief is not ordinarily... a failure to file a brief deprives a respondent, a petitioner, of their appellate proceedings entirely. And certainly if... we could also make the argument that if she had submitted a brief and the brief was inadequate for failing to challenge certain things on appeal, that could still render ineffective assistance of counsel. That could still constitute ineffective assistance of counsel. I know the board in this case did conduct somewhat of an analysis, even though she did not file a brief prior to counsel. But, I mean, the board could have dismissed the entire case. So that shows... I mean, it could be that it was an error not to file a brief. And so half of... we need deficient performance and prejudice, right? So it might have been deficient performance to not file the brief because that was a risk that the case would have been dismissed. But, in fact, the case wasn't dismissed. So how do we get the second half, the prejudice half, from the brief error? With regard to prejudice, Your Honor, there have been a number of decisions that have indicated that prejudice is ordinarily presumed in immigration proceedings when counsel's error deprives the alien of the appellate proceedings entirely. And I know that they didn't dismiss the case, but I would still argue that where an attorney doesn't file a brief and indicates they're going to do so, that the prejudice should still be presumed in that situation. There was no arguments raised. There was a few sentences in the notice of appeal, and counsel indicated that they were going to file a brief, but they still did not. And I think that prejudice should still be presumed in that instance based on the Court's decision. But if I may move on to the way the Board analyzed prejudice in this case, we're arguing that prejudice... that they applied an incorrect standard when applying the prejudice standard in this case. It's clear that to satisfy prejudice, Petitioner only had to show that ineffective assistance may have affected the outcome of her proceedings. That's not the standard the Board applied in this case. The standard the Board applied was we cannot find that competent counsel would have affected the outcome of proceedings. That's not the correct standard. Could you explain to us what arguments the brief could have made that weren't considered by the BIA? I think there were a number of arguments. They could have addressed the country conditions at the time regarding violence against both women and LGBT individuals. I know we're arguing ultimately that they increased since the hearing, but there was no arguments with respect to any country conditions at all to the BIA. I mean, there was nothing. Had there been country conditions evidence in the record at that point? Yes, there were. There were the State Department reports, and I think maybe Amnesty International and Human Rights Watch reports as well. There was no reference to them at all. But in the end, the Board applied an incorrect standard with respect to the prejudice prong of the ineffective assistance claim. I don't have much time left, but I did also want to just briefly mention the issue with Lizada compliance. The Board found that petitioner did not fully comply with Lizada because the bar complaint that was submitted was not formal. And again, the Board has not cited to any case or any requirement that distinguishes between a formal and non-formal complaint, and the government didn't cite to one either. So we would argue that Lizada was fully complied with in this case. And if there's no other questions, I'd like to reserve the balance of my time. Thank you. That sounds good. We'll hear from the government. Good morning, Your Honors. May it please the Court, Andrew Nsinga on behalf of the Attorney General. Three years ago, this Court agreed with the Board that petitioner failed to demonstrate that she was more likely than not to face torture by or with the acquiescence of the Brazilian government. Faced with this Court's decision and the Board's denial, petitioner filed this motion reopened based on changed country conditions and IAC. The Board did not abuse its discretion in denying either of those issues. Can I just cut to the chase here? Please. Do you think that the petitioner submitted evidence on the motion to reopen regarding that her risk of torture was increased because of her gender? She did not submit an argument. Much of the difficulty, Your Honor, is we as lawyers can come before this Court and say anything we want about what we argued, what we want to argue. What matters is on AR 275 or the record. AR 275 and 276. In fact, we don't really need to hear what I say or anyone says because we can look at the motion itself and say the argument is that on 275 that they met the burden, they cite the standard. Then they say in addition they moved to reopen based on changed country conditions. They talk about her being a lesbian. Then they say additionally it's gender-based evidence. Then they talk about a recently published report. Wait. Hold back up. Gender-based evidence. Right, Your Honor. But this is the problem. We can't read sentences in isolation. What it talks about is LGBT women are among the most at risk of being killed for femicide. Then we can continue on to 276, which is the argument. 275 and 276. Zero reference to any harm based on her simply being a woman as opposed to her being a lesbian. How do you read it that way? What do you make of lines 19 to 23 on 275? Right, and they refer to her orientation. No, they talk about gender only. No, LGBT women are the most at risk for being killed. Okay, and then the next sentence is entirely just about gender as I read it. It mentions gender, but the entire argument is about her orientation. I want you to read the next sentence and give me your argument. Right, right. Well, there's two problems with this, Your Honor. Please do what I asked. Read the next sentence and explain to me why that's not gender. In a report in November 2018 talking about country conditions of 2017, the Gender Equality Observation and Economic Commission for Latin America and Caribbean States said out of every ten femicides, four occurred in Brazil, and that Brazil ranks first in Latina America for femicides. That doesn't reference orientation, does it? Every discussion about petitioner does mention her orientation, Your Honor. So the board is supposed to read this one sentence, frankly, out of the context of petitioner's own argument and say, this is just about orientation. Forcing the board or remanding for such allegations creates a sort of whipsaw back and forth. Okay, so fair enough. I just want to make sure I understand the contours of your argument. Basically, if we agree with you that she only raised an orientation argument, that seems to be you're basically arguing forfeiture here as to gender. That's basically what you're arguing, right? If we disagree with you and we think that gender was a separate basis, do you think we need to remand in that case? No. And this is where the problems of evidence and the conceptualization of how the claim matter. So the problem with that sentence that Your Honor asked me to read is that article doesn't talk about country conditions in 2018. If that situation is so bad, the problem is that was the situation in 2017. And so it should have been brought up in the first and considered in the first. So it wasn't evidence of new changed country conditions. You may be right about that, but that's not what the BIA said. No, Your Honor, but here is again the problem. If you want to make a claim based on something, and your claim is based on changed country conditions based on your gender only, then you don't simply argue the entire structure of the argument is based on your orientation. Can I draw your attention? Sorry, can I interrupt you and draw your attention to a different sentence? So I'd like you to look at 275 lines 15 to 16. Additionally, gender-based violence against women, femicide, has increased in Brazil. Talking about under Bolsonaro, which is the more recent time, right? Correct. The now ex-president Bolsonaro. Okay, fine. That's a different argument. But in the argument to the BIA, she was saying this is a change and focusing on femicide in two different places. And then the next sentence, Your Honor, talks about her orientation. So, Your Honor, you want to read one sentence out of context, but we have to read the entire motion. We have at least two now. Nested within an entire discussion based on her orientation. And then the actual argument that she presents doesn't even attempt to show a change based on her gender. And again, this conceptualization problem bleeds then into this new allegation of aggregation. That's not correct, Your Honor. There is no aggregation analysis here. Why? Because there is no particularized threat towards petitioner whatsoever. Her statement says, who does she fear? People in Brazil. Okay, but cat can be... Police and government. What's wrong with that for a cat claim? Because we do not care about the motivation of the supposed torturers. What we aggregate are sources of torture. Now, if petitioner wanted to claim that these are separate actors... Okay, given what you say is true, couldn't it be qualitatively different the risk of torture or the number of individuals that would be willing to torture her if she were just a woman versus if she were a lesbian woman? That would have been a fine argument for petitioner to attempt to raise... Well, okay. I don't know. But that all comes back to your basic argument is we have to rule for you on forfeiture. And it's an interesting argument. You have some force to it because you're right. The general gist of this was her sexual orientation. And I think we have to decide whether a few straight comments... The problem is, does the BIA get any deference on this? And I don't think it does as to forfeiture. We have to go back and look at that and say, how do we interpret that? We don't get to give the BIA deference on how it interpreted her arguments. Would you agree with that? No, Your Honor. And I appreciate this is an interesting question because I think there's actually two separate issues going on here. One is the merits. That's forfeited. But the question is then, did the board misinterpret the motion reopened? The board did decide this issue. So because the board did decide this issue, the government's position is the court does owe deference to whether or not the board misread this motion reopened. What do you mean the board decided this issue? It decided that petitioner did not raise simply a gender-based claim that was separate from her orientation. I agree with you. That's exactly what the board said. And so it seems to me the question is, how do we review that? Normally we're reviewing BIA decisions on substantial evidence, but I don't think we're reviewing that on substantial evidence. We're reviewing that on was that a – we read the petition and we decide de novo whether we think that it was waived or not, right? If this were about forfeiture, yes. If this were about exhaustion on the merits, yes. But the question about whether or not the board misread the entire motion reopened in context, the board did that. So there is actually some decisions for the court to defer to. Okay, can I ask you a hypothetical? Say there were two whole pages in her brief with a separate heading. I am also saying the changed conditions are about women. Two whole pages about changes, recent changes of violence against women. And then the board has the exact same opinion and says, we don't consider the gender evidence because her claim is only about LGBT. What would we do then? We would need to read those two whole pages, Your Honor. The difficulty is that when we have hypotheticals, you would agree that we'd have to remand then, wouldn't you? I mean, if the board, if under Judge Friedland's hypothetical, if there's a separate heading and two pages of argument and citations to gender and then the board said, oh, they didn't raise a gender-based claim, wouldn't we have to remand in that circumstance? If all that discussion is just about gender and particularly if it raised a separate actor, then, yeah, I think that may very well and would need to be remanded. In fact, we wouldn't even be here. The government probably would just remand it on its own. But again, what we have here is simply an allegation that four women are killed every day now and that things were also bad before. This argument also seems contrary to the evidence. What petitioner seems to ignore that this court's decisions in Delgado, Ortiz, and Walker are all bad. Well, counsel, I don't disagree with you. I think she's got a very uphill battle, and that always enters into these. But this does seem different where, I mean, we are – I'm just trying to figure out how to – I really am trying to figure out how to rule in your favor without just sort of ignoring the fact that the board just flat-out said, you know, she didn't raise this argument, and it seems like she colorably did. Well, I think there is a separate way, first of all. One of them is that if this is an allegation to change country conditions, it doesn't even allege change country conditions based on women because what it actually says is now there's four women killed every day, and then in 2017 when Petitioner was in hearings, the claim that this court already decided, there are four out of ten femicides were committed in Brazil. Okay, let's go back to the sentence, 15 to 16. Additionally, gender-based violence against women has increased in Brazil, and then they're citing the country conditions evidence. I don't understand how you're saying it's the same. Because there's no evidence of a change. Okay, well, so the agency could consider it and then say there's no change, and so the claim loses, the reopening loses, but the agency didn't consider it. In the sentence it talks about the evidence, it talks about her orientation, LGBT women are the most at risk of being killed from femicide. And again, the analysis here is that what Petitioner is saying is four women are killed every day in Brazil. But we also under Walker have to keep in account general country conditions. The statistic on page 356 of the record, Your Honor, is that 64,000 people are murdered in Brazil in 2017. That equates to 175 murders a day. So what Petitioner has is there's four women killed a day in Brazil now, and what we knew in 2017 is that there are 175 murders a day in Brazil. Okay, so the agency could, if we remand, the agency could deny the claim for that reason. But they didn't, don't we only get to affirm on the grounds given by the agency, and the agency didn't say what you just said. If this is a legal error, then this court has to find some prejudice. And Petitioner has not even alleged any change. Again, look at the, you know, if we're going to read these sentences, then that sentence is about 2019. In 2019, that there are four women killed every day. And then in 2017, when she was in her hearing, four out of ten femicides in Latin America occur in Brazil. What that says is it was bad then, it was bad before. Conceptually evidentiary, there's no error. Because Petitioner didn't even attempt to argue to the board a change. Because Petitioner apparently did not read the evidence that Petitioner submitted. Because back it was bad, and before it was bad, and now it's bad. And again, this court's own decision supports that determination. To touch briefly on an effective assistance of counsel, Your Honor, there's neither a deficient performance nor prejudice. These were tactical decisions. Petitioner often cites cases that deal with the failure to file an appeal, and then we presume prejudice. There was no failure to file an appeal. They filed the appeal, and perhaps we would have a different case if the board found waiver. It did not. It decided the case on the merits. This court, three years ago, agreed with the board. So indeed, it seems like it was a reasonable tactical decision, given that everyone has reviewed this case from the board to this own court, has agreed that that record failed to compel reversal. So this tactical decision, particularly in light that she did out of the U visa that the prior attorney thought would be best to pursue, was reasonable sense. So relying on the decision, it's not a failure necessarily. It was an intentional decision. Can I bring you back? I have a question about the changed country conditions, based on your argument that I'm just thinking through here. If she did show a worsening of conditions against LGBT people, and maybe you're going to disagree about that too, but let's just take that as a premise. She showed that change. In order to figure out whether there should be reopening based on that change and whether it could push the CAT claim over the 50% amount, doesn't the agency need to consider all the risks of torture that she faces, even if some of them hadn't changed? Like there's a big risk of torture just from being a woman. Say that stayed the same. If the LGBT increased, she could get above 50% potentially, and she would be entitled to reopening. Is that right? Your Honor, raising an argument, an oral argument for the last time, that's not raising this to the board. And the answer largely is no. Here's the thing. This is about a changed country conditions analysis is about timeliness. And this is an attempt to show timeliness. Okay, so let's assume she showed a change to the LGBT status. She did not. Okay, let's assume she did. What's wrong with the idea that you have to lay her on top because under Velasquez and other cases you have to take all of the risks? You have to take all the sources of risk. But there is no even attempt to suggest that people who would torture her because of her orientation are different than people who would torture her due to her gender. I think it's very clear that our cases say that you need to take, see if the total risk against her is 50%. I don't think there's any case that says you can ignore it that limits that. We're supposed to figure out how much risk she faces. Based on what she alleges to the board, Your Honor, and what she alleges again to the board was her LGBT. It's not enough to come to this point, by the way, I have short hair. I'm left-handed. Then toss out random traits and create essentially a cat stew of allegations simply to get remand on a claim that could have been raised to the board. If a petitioner wanted to raise these claims to the board, she was free to do that, but she did not, and the board did not abuse its discretion in denying that motion. Okay, we've taken you over your time. Let's hear rebuttal, please. Thank you, Your Honor. Thank you, Your Honors. In regards to whether or not the argument was sufficiently brought before the board regarding gender, I don't think there's any doubt. I mean, it took— Well, counsel, to be fair, there is something to the government's argument here that, you know, this was sort of mumbled up. I mean, you take a couple of sentences out of isolation, and they do suggest that there's gender. But the gist of your argument, I mean, you have to agree, the gist of your argument was on sexual orientation, right? It was based on both gender and sexual orientation, Your Honor. And, I mean, in addition to— Do you agree that you could have made that clearer? I mean, we could have put a separate heading, but at the same time, being a lesbian, given that Petitioner's a lesbian, I mean, she's female, it might have seemed a little redundant to make that in a separate heading. Well, the problem with that statement, as it sort of plays into my original question to you, is doesn't their analysis just bootstrap that in? And you seem to say in your opening argument that, no, it doesn't. These are separate issues. They are separate issues. Let me ask you a more fundamental question. The government, in its closing statement, suggested that the BIA didn't abuse its discretion in reading the briefs that way. What is the standard we review here? Do we look at this in this case and say, did the BIA abuse its discretion? This is kind of confusing. Or do we do a de novo review about whether it was forfeited or not? I believe it's a de novo review. You don't sound extremely confident, but we'll— Well, it is kind of a unique situation. But if I may, I just want to point out that, in addition to the arguments that we made at 275 of the record, Petitioner also articulated it in her declaration, which is at 293. Wait, sorry, repeat that? 293 repeated what, the gender? Yes, that she makes reference to fear based on gender as well. So, I mean, we can— Maybe it could have been more clear. I'll concede that. But it was raised sufficiently. And it's clear as the daylight as we're reading it. I disagree with the government that it somehow was not preserved. I think that's—I don't know how you can look at this and not appreciate the argument that's raised there. And as Judge Freeland pointed out, we're faced with the problem of having to look at this in the aggregate. All potential risks of harm, and the board did not do this. And certainly they were free to look at the increase, look at the evidence regarding violence against women and say, this is a continuation, it's not new evidence. But they can't just disregard it. And that's what they did here. And that requires a remand from this court. Thank you. Thank you both sides. This case is submitted.
judges: FRIEDLAND, NELSON, Cardone